## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

CARVETTA MYLES                          CASE NO.  2:20-CV-01126

VERSUS                                  JUDGE JAMES D. CAIN, JR.

SERVICE COMPANIES INC                   MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the Court is "Defendant's Partial Motion to Dismiss Pursuant to Fed.R.Civ.P.12(B)(6)" (Doc. 5) wherein Defendant The Service Companies, Inc. ("TSC") moves to dismiss Plaintiff Carvetta Myles' Title VII claims that are unexhausted and Title VII and Section 1981 retaliation claims.

## ALLEGATIONS

Plaintiff brings this lawsuit to redress the deprivation of rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of  1991 ("Title VII") and 42 U.S.C. § 1981,  as amended by the Civil Rights Act of 1991 ("Section 1981").[1]

Defendant, TSC, hired Plaintiff, an African American, on or about October 28, 2013,  in its transportation department.[2] The employees who worked in the transportation department transported employees of the L'Auberge Casino Resort, the Golden Nugget

---

[1] Doc. 4, ¶ 1.
[2] Id. ¶ 11.

Casino Resort and Delta Downs Racetrack Casino Hotel,  via vans and/or shuttle buses, to and from their homes to work at the casinos, as well as for shopping on off days.[3]

Plaintiff was a driver who transported employees of the casinos to and from their homes.   In 2016, Plaintiff was promoted to Transportation Supervisor.[4] TSC allowed Plaintiff and other drivers to drive their vans or shuttles used to transport employees, to their homes.[5] The vast majority of TSC's employees were African American.

TSC hired Amanda Carriere, a Caucasian, in 2014, as a Human Resource associate in the transportation department. Plaintiff alleges that from the moment she started, Carriere treated African American drivers harshly.[6] Plaintiff alleges that Carriere talked about African Americans' hairstyles negatively and spoke negatively about the manner in which African Americans dressed. Plaintiff further alleges that Carriere directed non-African American to make false accusations against African American employees in attempts to get the African American employees disciplined.[7] Only non-African American employees were treated this way, whereas, non-African Americans were not treated harshly.[8]

Plaintiff alleges that Carriere stated to non-African Americans that she "could not stand those people," and inquired as to how the non-African Americans liked working with "those people." Carriere referred to African Americans as "monkeys."[9]

---

[3] Id. ¶ 12.
[4] Id. ¶ 14.
[5] Id. ¶ 15.
[6] Id. ¶ 18.
[7] Id. ¶ 19.
[8] Id. ¶ 20.
[9] Id. ¶ 21.

Plaintiff alleges that Carriere created false reports against African Americans resulting in writes ups and/or reprimands which placed drivers at risk of losing their jobs, or in some cases caused them to lose their jobs.[10] Plaintiff also alleges that Carriere had African Americans written up for offenses or terminated, but that Caucasian drivers who committed the same offenses were not written up or terminated.[11]

Plaintiff alleges that even though senior-level management was aware of Carriere's conduct, they failed to curtail or address it.[12] TSC's senior management team not only condoned the discriminatory conduct against Plaintiff and other African American drivers but encouraged such conduct.

Plaintiff complains that on one instance in August 10, 2016, a Caucasian employee referred to an African American employee as a "nigger," which she reported to the Director of Human Resources. The Director failed to respond to the incident.[13]

Plaintiff reached out to the  Keith Gaines (Director of Operations), Leslie Oaks (Director, Human Resources), and Anjuli Ganguly (Director, Southern Region, Human Resources) to complain of the incident and to address the use of derogatory and disparaging words towards the African American drivers.[14] Senior management failed to address the issue.[15]

---

[10] Id. ¶ 22.
[11] Id. ¶ 24.
[12] Id. ¶ 25.
[13] Id. ¶ ¶ 27 and 28.
[14] Id. ¶ 30.
[15] Id. ¶ 31.

After Plaintiff's complaint went unanswered, and Carriere's treatment of African American drivers intensified, Plaintiff, along with several other drivers, drafted a letter of complaint and issued it to senior management regarding Carriere's treatment of African American drivers. Plaintiff and several other drivers signed the letter.[16] On August 17, 2016, Plaintiff e-mailed the letter to the senior management team, including Keith Gains, Leslie Oak, Anjuli Ganguly, and Erica Monteverdi (Manager, Human Resources).[17] The senior management team did not respond to the letter.[18]

On or about August 26, 2016, management conducted an "audit."[19] Throughout Plaintiff's tenure, TSC had never conducted an "audit" of the transportation department.[20] During the audit, Plaintiff was terminated for "not using the GPS system in a manner that would track drivers' time; not having proper documentation for van maintenance; and allowing drivers to use company vans without providing receipts."[21]

On August 22, 2016, when the Oaks, the Director of Human Resources, learned of the drivers' meeting, Oaks held a meeting with Carriere and another Caucasian employee and informed them of the drivers' complaint.[22] Plaintiff alleges that Oaks "stated that she would have someone in the transportation department fire all drivers and the supervisor before the end of September 2016.[23] Shortly, thereafter, the "audit" was instituted and the

---

[16] Id. ¶¶ 35 and 36.
[17] Id. ¶ 37.
[18] Id. ¶ 38.
[19] Id. ¶ 40.
[20] Id. ¶ 41.
[21] Id. ¶¶ 43 and 44.
[22] Id. ¶¶ 48 and 49.
[23] Id. ¶ 52.

supervisor and other African American drivers who signed the letter/complaint were terminated.[24]

Plaintiff alleges that he became aware of email communications between Oaks, Carriere and Ganguly wherein TSC had determined that it would terminate Plaintiff and other African American drivers who had lodged the complaint.  Some of these communications celebrated the fact that the ploy Oaks had discussed in her August 22, 2016 meeting with Carriere and the other Caucasian employee had been successful.[25]

The communications allegedly reveal that Carriere proclaimed "We did it" and Oaks wrote, "Hey, Yes, Anjuli called me. I'm glad those niggers are gone.  We have to work on a few more before September 15th. I told you I would do all I can to get them out of there."[26] Ganguly responded, "You guys are so crazy! I can't stand those niggers! Thanks to Victor[.]"[27]

Before the end of September 2016, several other drivers, all of whom had executed the letter sent to management, were terminated.[28]

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set

---

[24] Id. ¶ 53.
[25] Id. ¶ ¶ 54 and 55.
[26] Id. ¶ ¶ 56 and 57.
[27] Id. ¶ 58.
[28] Id. ¶ 45.

of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than

an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955.

## LAW AND ANALYSIS

Plaintiff filed an EEOC Charge (the "Charge") on December 21, 2016, against TSC which alleged race discrimination and retaliation beginning on July 1, 2016, allegedly lasting until August 31, 2016.[29] Plaintiff filed the instant Complaint on August 29, 2020, and an Amended Complaint on September 11, 2020.[30] In her Amended Complaint, Plaintiff alleged race discrimination and retaliation under Title VII and 42 U.S.C. § 1981.

TSC moves to dismiss any Title VII claims that were not exhausted, and Plaintiff's retaliation claims under Title VII and § 1981.

*Exhausted claims*

"[A] court may entertain a Title VII lawsuit only if the aggrieved party has (1) exhausted his or her administrative remedies, and (2) has filed suit within the time permitted after receiving a 'notice of right to sue.'" *Taylor v. Books-A-Million,* 296 F.3d

---

[29] Defendant's exhibit A, Doc. 4-1.
[30] Docs. 1 and 4, respectively.

376, 378-79 (5th Cir. 2002).  Exhaustion of administrative remedies is a prerequisite to filing suit under the federal discrimination statutes. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995). Exhaustion occurs when a complainant timely files a charge of discrimination with the EEOC and receives a notice of right to sue. 42 U.S.C. § § 2000e -5(e)(f); see also *Taylor,* 296 F.3d at 379. To file suit under Title VII, a plaintiff must first file a charge with the EEOC within a certain time period. [31] Courts should not condone lawsuits that exceed the scope of EEOC exhaustion.  *McClain v Lufkin Industries, Inc.,*519 F.3d 264, 274 (5th Cir. 2008).

EEOC complaints are broadly construed, but only in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Id.* (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)). Courts may "look slightly beyond [the Charge's] four corners and to its substance rather than its label." Allegations in a complaint that allege grievances not raised at the EEOC will be dismissed. See *Id.*  at 274 (citing *Pacheco v. Mineta,*448 F.3d 783 (5th Cir. 2006)).

TSC contends that Plaintiff's alleged claims of race discrimination on or about August 10, 2016, are outside the scope of the EEOC charge. Specifically, Plaintiff alleges in her Amended Complaint that an incident occurred wherein a Caucasian employee referred to an African American employee (not Plaintiff) as a "nigger."[32]  Plaintiff further alleges that she reported the incident to the Director of Human Resources who failed to

---

[31] In Louisiana, that time period is 300 days. See *Martin v. Winn-Dixie Louisiana, Inc.,*132 F.Supp.3d 794, 915 (M.D. La. 2015).
[32] Amended Complaint, ¶ 27, Doc. 4.

respond.[33]  Plaintiff then reported the incident to Carriere—the local HR representative-who refused to take any corrective action against the Caucasian employee.[34] Plaintiff then reached out to multiple members of senior management concerning the incident and requested a meeting; again, senior management failed to respond.[35]

In her EEOC charge, Plaintiff states that as the Transportation Supervisor, she had a duty to report any discriminatory conduct that she had either witnessed or that was reported to her.[36] Plaintiff states that shortly after Carriere arrived at TSC as the Human Resource associate, black employees began to complain to her about unfair treatment, harassment, and racially charged slurs and comments made by Carriere. Plaintiff also states that she reported what she had witnessed and/or what had been reported to her, to the Human Resources Director, but no timely corrective action was taken, and Carriere's discriminatory treatment toward black employees intensified.

The EEOC Charge indicates race discrimination and retaliation. The Court finds that allegations made in the Amended Complaint grow out of the EEOC charge and therefore, Plaintiff has exhausted her administrative remedies as to racial discrimination under Title VII.

*Protected activity*

To assert a Title VII claim, a plaintiff must show (1) that the plaintiff engaged in protected activity under Title VII; (2) that an adverse employment action occurred; and (3)

---

[33] Id. ¶ 28.
[34] Id. ¶ 29.
[35] Id. ¶ ¶ 30 and 31.
[36] EEOC Charge of Discrimination, p. 2, Doc. 4-1.

that a causal link existed between the protected activity and the adverse action. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004). The causation requirement for a Title VII retaliation claim requires the heightened "but-for" causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517 (2013). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting or participating in any investigation, proceeding or hearing under Title VII." *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 657 (5th Cir. 2002).

TSC maintains that Plaintiff has not stated a plausible claim of relief for retaliation under Title VII. Specifically, TSC argues that Plaintiff has not properly alleged that she engaged in any statutorily protected activity. TSC remarks that the "Driver Letter" signed by numerous employees, including Plaintiff, and presented to senior management did not reference any unlawful employment practice under Title VII. Thus, it does not constitute protected activity. See *e.g. Tratree v. BP N. Am. Pipelines, Inc.,* 277 Fed. Appx. 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not protected activity."); *Harris-Childs v. Medco Health Solutions, Inc.,* 169 Fed. Appx. 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claims where plaintiff never "specifically complained of race or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.,* 150 Fed. Appx. 315, 319 (5th Cir. 2005) ("Moore . . . was not engaged in protected activity, as his grievance did not oppose race or protest racial discrimination or any other unlawful employment practice under Title VII.)"; see also *Evans v. Tex. Dep't of Transp.,* 547 F.Supp.2d 626, 654 (E.D.Tex. 2007) ("Plaintiff has not shown that she engaged in a statutorily protected activity. Specifically, although

Evans complained of a purportedly hostile work environment, at no time did she suggest that [the conduct at issue] was related to Evans' race, sex, . . . or other protected characteristic protected by Title VII."). The letter provides as follows:

> Dear Human Resource Director:
>
> I am writing to you today to discuss some aspects about the Transportation Department job that has become unbearable in recent months.  Most notably, Amanda Carrier's behavior in the office has been extremely uncomfortable and unpleasant.  She has been unreasonably critical about the drivers work, she has harassed them about their appearance, taking their lunch break as they're entitle [sic] to, whenever a driver picking up riders at the casino and she's there, she will approach them and asked them why are they sitting in the van.  If there is an issue with the drivers or dispatchers, she doesn't address it to the Supervisor or the Assistant Supervisor; she goes above them and reports it to HR director(s). We as the Transportation Department think it's unfair to us as employees to allow this behavior to continue in this matter.
>
> All the drivers as well as the dispatchers, feel the same way about Amanda, because they too have expressed their discomfort. Please contact us along with our Supervisor and Assistant Supervisor as soon as possible to let us know how this challenging situation can be resolved. I would be happy to set up a time to meet with you in persons or have a conference call. Thank you very much for your prompt attention to this important issue.[37]

The driver letter which is signed by thirteen (13) TSC employees generally complains about Carriere's behavior which is "extremely uncomfortable and unpleasant."[38] The letter notes specific complaints, but does not by itself, appear to have a racial undertone. The letter does request a meeting with senior management to discuss the drivers' expressed discomfort. The letter was emailed to senior management (as noted above) on August 17, 2016, which is about one week after Plaintiff complained to senior

---

[37] Doc. 5-2.
[38] Id.

management and Human Resources of alleged derogatory and disparaging words spoken to the African American drivers. Nine (9) days later, an "audit" was conducted resulting in Plaintiff and several other African American drivers who had signed the letter being terminated.

A good faith complaint to a human resource representative or management officer regarding retaliation and discrimination is protected activity. *Rodriguez v. Wal-Mart Stores, Inc.,* 540 Fed. Appx. 322, 328 (5th Cir. 2013) (*per curiam*) ("An employee who files an internal complaint of discrimination engages in a protected activity." *(Citing Fierros v. Texas Dep't of Health,* 274 F.3d 187, 194 (5th Cir. 2001).

The Court finds that the letter coupled with the previous reports and/or complaints made by Plaintiff to senior management and Human Resources is sufficient to state a plausible claim for relief for retaliation.

## **CONCLUSION**

For the reasons set forth above, the Motion to Dismiss will be denied.

**THUS DONE AND SIGNED** in Chambers on this 23rd day of February, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**